# O'Connor's Estate.

*Wills—Probate—Deed—Contract — Extrinsic evidence — Intention—Form of paper.*

1. If a paper offered for probate is testamentary in character, is executed in the manner provided by statute and its purpose is that the whole or any part of the maker's estate shall be given, after his death, to the distributees named therein, it is in law a will and may be probated as such, though in form a deed or contract.

2. Where a decedent has done two acts, one in form distinctively testamentary and the other and later act distinctively nontestamentary in form, and couched, with strict technical propriety in the apt language of a contract, the latter should not be probated without clear proof of fraud, accident or mistake.

3. Under such circumstances, the fact that the form of a deed or contract has been adopted, rather than the form of a will, may be a matter of large significance.

4. Where the language used in an instrument admits of but one construction, or has definite legal import, collateral inquiries as to the intention of the maker are not permissible; the court can only construe the meaning of the words the maker uses.

5. If, however, the court, having before it two papers executed about the same time, both alleged to be wills, after due consideration of the language used in both, is still left in doubt as to whether or not the one last executed was intended as a will, extrinsic evidence may be offered to solve the doubt.

Argued January 31, 1922. Appeal, No. 14, Oct. T., 1922, by Margaret B. O'Connor, widow, from decree of O. C., Cambria Co., dismissing appeal from Register of Wills, in the matter of the petition of Margaret O'Connor, widow of Francis J. O'Connor, deceased. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ. Reversed.

Appeal from register of wills. Before REED, P. J.

The opinion of the Supreme Court states the facts.

Appeal dismissed. Margaret B. O'Connor, widow of testator, appealed.

*Error assigned,* inter alia, was decree, quoting it.

*Philip N. Shettig,* with him *Charles A. Poth* and *F. J. Hartmann,* for appellant.—The agreement was not testamentary in character: Mack's App., 68 Pa. 231; Megary's Est., 206 Pa. 260; Fellbush v. Fellbush, 31 Pa. C. C. R. 350; Book v. Book, 104 Pa. 240; Scott's Est., 147 Pa. 89; Kisecker's Est., 190 Pa. 476; Lillibridge's Est., 221 Pa. 5; Willing's Est., 212 Pa. 136; Sunday's Est., 167 Pa. 30.

The evidence shows positively that testator never intended or declared this second paper to be part of his will, and always referred to it as an agreement, and declared it to be such.

The wife's interest could not be affected by the agreement: Bierer's App., 92 Pa. 265; Darlington's App., 86 Pa. 512; Gibbons v. Gibbons, 175 Pa. 475; Shea's App., 121 Pa. 302; Tiernan v. Binns, 92 Pa. 248; Campbell's App., 80 Pa. 298; Kaiser's Est., 199 Pa. 269; Odenwelder's Est., 1 Pa. Superior Ct. 345.

An agreement by a wife to elect to take under the will or against it before the husband's death is void as against her: Kreiser's App., 69 Pa. 194; Campbell's App., 80 Pa. 298; Watterson's App., 95 Pa. 312; Woodburne's Est., 138 Pa. 606.

The absolute devise to the wife is not subject to any trust: Church v. Ruland, 64 Pa. 432; Fox v. Fox, 88 Pa. 19.

Where there is an absolute devise in a will, a subsequent clause, or a subsequent paper attempting to restrict the devisee in the use of the property, will be ineffectual for that purpose: Bowlby v. Thunder, 105 Pa. 173; Good v. Fichthorn, 144 Pa. 287; Cressler's Est., 161 Pa. 427; Evans v. Smith, 166 Pa. 625; Heck's Est., 170 Pa. 232; Bellas's Est., 176 Pa. 122; Chew v. Chew, 266 Pa. 526; Fisher's Est., 268 Pa. 405; Pattin v. Scott, 270 Pa. 49.

*John S. Wendt,* for appellees.—If the instrument does not in legal effect operate until the death of the maker, it is a will: Turner v. Scott, 51 Pa. 126; Schad's App., 88 Pa. 111; Fellbush v. Fellbush, 216 Pa. 141; Coulter v. Shelmadine, 204 Pa. 120; Frew v. Clarke, 80 Pa. 170.

Without regard to the form, it is competent to show by extrinsic collateral evidence that a document was written and executed with testamentary intent: Kisecker's Est., 190 Pa. 476; Sunday's Est., 167 Pa. 30; Scott's Est., 147 Pa. 89; Tozer v. Jackson, 164 Pa. 373; Patterson v. English, 71 Pa. 454; Diehl's Est., 11 Pa. Superior Ct. 293.

The document in the form of an "agreement" is testamentary in character and substance: Porter's App., 94 Pa. 332; Frederick's App., 52 Pa. 338; High's App., 21 Pa. 283.

Where a legatee or devisee receives property from a testator, under a promise to do something in relation thereto, upon the faith of which the will was made, or one already made, was not altered, the promise is binding on such legatee or devisee and will be enforced: Brooke's App., 109 Pa. 188; Gallagher v. Gallagher, 6 Watts 473; Hodnett's Est., 154 Pa. 485; Hoffner's Est., 161 Pa. 331, 341; McAuley's Est., 184 Pa. 124; Socher's App., 104 Pa. 609; Blick v. Cockins, 234 Pa. 261; Fickes's Est., 59 Pa. Superior Ct. 535.

OPINION BY MR. JUSTICE SIMPSON, February 13, 1922:

When Francis J. O'Connor died he was a judge of the Court of Common Pleas and Orphans' Court of Cambria County, and had been for the greater part of seventeen years, and for some time prior thereto had been an active practicing attorney. In the light of these facts we must consider his sayings and doings hereinafter referred to.

After his death the register of wills probated two papers. One of them was in the time-honored form of a will, recited that it was his "last will and testament," directed the payment of his debts, funeral expenses and

certain legacies, and gave the residue of the estate to his wife, the appellant here, the attestation clause stating that he "published and declared [it] . . . . . . as and for his last will and testament." The other paper, which was executed on the same day, immediately following the execution of the will, was in the usual form of an agreement between decedent, appellant and "her two trustees and attorneys in fact," named therein, by which, among other things, she agreed to transfer to the trustees and attorneys in fact the estate given her by the will.

A few days after the probate, the draughtsman of the will and agreement, a member of the bar and for many years the secretary and friend of decedent, drew an assignment, in accordance with the terms of the agreement, and tendered it to appellant for execution. She refused to sign it; but, thus ascertaining what had been done, appealed from the decision of the register of wills and asked the orphans' court to vacate the probate of the agreement. A citation was issued and answers were filed, one thereof by the draughtsman, who was also an executor under the will and a trustee named in the deed, submitting himself to the action of the court, and another by certain collateral heirs, appellees here, who denied the facts alleged by appellant and averred the agreement was testamentary and properly probated. Evidence was taken, the court below dismissed the petition, and this appeal followed.

It is of course true that if a document offered for probate is testamentary in character, is executed in the manner provided by statute, and its purpose is that the whole or any part of the estate of the maker is to be given, after his death, to the distributees named therein, it is in law a will and may be probated as such, though in form a deed or contract: Turner v. Scott, 51 Pa. 126; Coulter v. Shelmadine, 204 Pa. 120. It is equally true, however, that in determining whether or not a paper, in form a deed or agreement, is testamentary and therefore entitled to probate, certain rules, founded in common

sense and adopted by the law, have been steadily applied by the courts. Thus it is said in the opinion of the court below in Sunday's Est., 167 Pa. 30, 36, approved by this court: "Where a decedent has done two acts, one of which is distinctively testamentary in form, and the other and later act is as distinctly nontestamentary in form, and is couched, with strict technical propriety, in the apt language of contract, there is no reason for holding the latter testamentary, without clear proof of fraud, accident, or mistake." So also we said in Fellbush v. Fellbush, 216 Pa. 141, 143: "Since the distinction in purpose between a deed and a will is so obvious and so generally understood, the fact that the form of one has been adopted rather than the other, is a circumstance which in some cases may be of large significance. What the case of Turner v. Scott, supra, is authority for is that, where the language used in the instrument to express the purpose admits of but one construction, or has definite legal import, such outside and collateral inquiries have no place in the investigation for the reason that, in such cases, it is not a question of what the party may have meant or intended, but what is the meaning of the words he used."

It is also true that, if a paper, which is offered for probate, is signed by others as well as the alleged testator, is intended to convey an estate or interest of some one else than decedent, it cannot be treated as testamentary, though it becomes effective at the same time as the will, and the estate or interest is derived thereunder, for it operates upon that which is not a part of decedent's estate.

Bearing these principles steadily in mind, we find, on turning to the agreement, that it is in form a tripartite contract stipulating that, in consideration of testator's making the will giving appellant the residue of his estate, she agrees to transfer all she gets (except the home in which she resides, the contents thereof and a designated old homestead farm), to two persons, whom she "hereby

stipulates and agrees......to constitute and appoint ......*her* trustees and attorneys in fact," who shall have full and complete management of that which she transfers to them, with a power to sell, convey and dispose of it as they shall deem proper and advantageous; "for the purpose of making the agreement between the parties hereto effective," appellant "will execute and deliver to the......trustees......proper deeds of conveyance or bills of sale,......with the intent that the residue of said estate shall be distributed to the collateral heirs" of decedent; "out of the income or principal of said estate in their hands" they are to pay her certain sums each month, which, however, shall not commence to be paid until one year after the death of decedent, if appellant "shall receive sufficient insurance money for her use during the interim"; she agreeing that her "trustees and attorneys in fact......may distribute" the balance of the income in their hands, and at her death the principal, to such of the collateral heirs of decedent as they deem fit and worthy, "the trustees and attorneys in fact...... to act in such circumstances as if they were distributing their own funds."

It will be noted that this paper is not only called an agreement, but is in form an agreement, is executed as such, the language used is that which appertains to an agreement and not a will, and it is intended to transfer the estate appellant is to derive under the will "to *her* trustees and attorneys in fact," not to any one representing decedent's estate, the consideration alleged being the residuary gift to her. If decedent intended the agreement to be testamentary then this consideration fails, for she gets nothing whatever under the will, but only that which the agreement gives her. It will be observed also that it is intended to operate upon the estate appellant derives under the will, distributing it and only it in the way specified, and does not refer to testator's estate, save as the source from which appellant obtains the property which she agrees to convey to "her trustees

and attorneys in fact." It does not operate as a codicil, to the will, but on the contrary disposes of the gift under the residuary clause, exactly as such an agreement would be expected to do, instead of revoking that clause, as a codicil ordinarily would do if it was not intended to thereafter have any effect. For these reasons, upon a construction of the paper alone, we cannot avoid the conclusion that its purpose and intent is clear, it is an agreement, as it says it is, and no "question [can arise] of what [decedent]......meant or intended, [this being the] meaning of the words he has used": Fellbush v. Fellbush, supra.

The conclusion thus reached obviates the necessity for weighing the extrinsic evidence, as we would be required to do if we were left in doubt as to the character of the paper (Kisecker's Est., 190 Pa. 476); but we may briefly state that the reasons given to explain why decedent executed two papers, instead of the will expressing his purpose in full, leave a bad taste in the mouth, in that they ascribe to him an intention of cheating the Commonwealth, deceiving the public, and also of wronging appellant, unless she knowingly and intentionally joined in that which he did; and they attribute to him an amazing ignorance of the motives which actuate humanity and of the scope and effect of the law he had so long administered. The first reason is that he wished to escape the payment of a collateral inheritance tax on the ultimate transfer to his heirs; yet it would be legally collectible whether the estate passed by agreement or will, or at the death of testator or appellant, and whether considered as his or her property. The second reason is that he wished the public to believe he had given the whole of the residue to appellant, who had been a devoted wife and nurse to him for many years; yet the falsity of this appeared at once on the probate of the agreement, which occurred without her knowledge, and the fact would soon be known in any event either by her stating her grievance or because of her mode of life. The

third is he wished to prevent appellant electing to take against the will and thereby obtaining one-half of the estate under the intestate laws; yet if the agreement is testamentary not even the semblance of an argument can be made to show why she cannot take against it, exactly as in the case of any other testament. Finally it is said he did not wish any part of his estate to go to her relatives; yet this could be effectuated by a provision in the will, as well as it could be by a collateral testamentary agreement. We can only hope that some other motive, perhaps unexpressed, actuated decedent in the course he pursued; but in any event since his desires, as expressed in these reasons, could be at least as well accomplished by a will properly drawn, as they can be by this will and agreement, together, they do not show cause against the latter being considered, as it purports to be, as a contract inter partes and not testamentary.

The decree of the court below is reversed and the probate of the agreement is vacated and set aside, the costs of this appeal to be paid by appellees.