## Hurley's Estate.

The facts appear from the adjudication of

HENDERSON, J., Auditing Judge.—The fund before me arises under a deed of trust dated July 29, 1927. I am requested to determine if the instrument is in effect a deed or merely a testamentary paper. It should be observed at the outset that the name given to the writing is not controlling.

By the agreement, this decedent assigned to the Continental-Equitable Title and Trust Company, for the consideration of one dollar, the sum of $20,000 in cash, to hold, manage, invest and reinvest.

The third and sixth clauses of the agreement provide as follows:

"Third. During the lifetime of the Donor the Trustee shall collect the income and pay it over in quarterly yearly installments to the Donor, and after the decease of the Donor, the Trustee shall pay over and distribute said trust estate and any income thereon and not paid to Donor to and among my grandchildren, viz.: Edward G. Hurley, Arthur J. Hurley, Raymond B. Hurley, Vincent P. Hurley, Leo Hurley, Richard L. Hurley and Samuel J. Hurley, in equal shares."

"Sixth. The Donor reserves the right to withdraw from the operation of this agreement any or all of the property held in trust; to add other property; to change the beneficiaries, their shares, or the plan of distribution, and to modify, amend, add to or entirely revoke this Trust agreement."

In his lifetime the decedent withdrew $5000 of the fund; and by his will he gave his residuary estate, one-half to his widow and the remaining half to his seven grandchildren.

This fund is claimed by the seven grandchildren and by the widow, who has elected to take against the will and who has requested the executors to claim the fund as belonging to the decedent's estate. In the absence of such a request from the executors, she is prosecuting the claim herself.

It should be observed that the so-called deed of trust vests no present interest in third persons, that it is a mere agency agreement to manage these

funds and that, so far as the grandchildren are concerned, it is ambulatory and testamentary in character.

It furthermore should be pointed out that while this paper was executed July 29, 1927, the grantor's will, giving one-half of his estate to his widow, was executed May 25, 1927, and republished by codicil dated May 18, 1931.

The question is much like that involved in Rick's Appeal, 105 Pa. 528, 535, wherein Mr. Justice Paxson said:

"The case in hand is upon all-fours with Frederick's Appeal, 52 Pa. 338, and if that case is still law, the court below committed no error. It was held that the instrument was in effect a mere power of attorney; an instrument of agency and revocable at pleasure; that the deed was made for the grantor's own personal convenience; that the trustees were to account to him for all they did under the powers vested in them, and that no beneficial interest was to vest in his children till after his death. A disposition of property to take effect after the grantor's death is testamentary, and, therefore, revocable. The decision in Frederick's Appeal did not rest upon the form of the instrument merely. It was decided distinctly upon the ground that the conveyance was without consideration; that it was purely voluntary, to promote the convenience and protect the interests of the grantor; that it passed no present interest, and as to those who were to be benefited after his death, 'it was a mere covenant for posthumous gifts, and as such nudum pactum.'"

See, also, Hill's Estate, 15 D. & C. 699, Beaumont's Estate, 214 Pa. 445, and Turner v. Scott, 51 Pa. 126.

The fund is awarded to the executors of the deceased grantor, and the claim of the grandchildren is dismissed.

. Counsel for the widow objected to the 3 per cent. compensation upon the fund of $20,000, as provided in the agreement, on the ground that this was not a deed of trust. I am of the opinion there is nothing in the objection, for the reason that while the agreement constituted an agency, it was perfectly competent for the decedent to agree upon compensation to the agent.

Under the agreement, commissions were to be deducted on any amounts withdrawn by the decedent from the deed, and on two occasions the settlor-decedent did withdraw in all the sum of $5000. Strictly speaking, under the agreement, commissions should have been deducted when the funds were withdrawn, but it was perfectly competent for the settlor and the agent, or alleged trustee, to postpone that payment until the termination of the agreement. These objections are dismissed.

Inasmuch as the fund will be awarded to the executors of the estate of Samuel Hurley, the deceased settlor, the claim of the Commonwealth for transfer tax will be properly presented upon the account of such executors.

*Byron, Longbottom, Pape & O'Brien,* for exceptants.

*M. T. McManus,* contra.

GEST, J., March 11, 1932.—The question in this case is whether the deed of trust executed by the decedent on July 29, 1927, should be considered as testamentary in character or not. The will of the decedent was executed two months prior to the deed and was republished by a codicil some four years thereafter.

At the outset, we observe that we find nothing in the case to indicate an intention on the part of the decedent to defraud his widow of her marital rights. The case in this respect differs materially from Hill's Estate, 15 D.

& C. 699, where the testator's will devised his estate to his children, excluding his wife from whom he was separated, and the deed of trust, executed contemporaneously and a few days before his death, transferred all his estate to a trustee, on whom he imposed practically all the duties of an executor. We held that the deed was palpably executed in fraud of the widow's rights, and surcharged the executor, who was also trustee, with all the assets in his hands. The question in this case is broader and requires us to consider whether this voluntary deed, which contains a power of revocation, is testamentary in character. The cases are numerous, and the most important have been cited by the learned counsel, but it is somewhat difficult to extract from their varying facts, and the propositions of law contained in the opinions of the courts, a rule that can be applied in all cases.

The essence of a will is that its provisions are intended to take effect after the maker's death, and the test is whether the instrument was executed animo testandi. This may appear either from the very terms of the instrument itself or from the circumstances attending its execution, or from both. It is, therefore, important to consider, for example, whether the terms of this deed indicate that it was executed for the temporary and personal convenience of the maker, and whether any beneficial interest passed eo instanti to a third person, or whether the death of the maker was a prerequisite to the vesting of such beneficial interest. It may also be important to consider whether the instrument reserves a power of revocation, or is in terms irrevocable, and yet this is by no means controlling, for if an instrument is unmistakably intended as a will, the recital in it that it cannot be revoked is nugatory, for it is an essential characteristic of a will that it is ambulatory until the testator's death, and, on the other hand, the instrument may contain a power of revocation and yet be good as a deed in præsenti.

In the present case, we are without any help from testimony dehors the instrument itself, and after careful consideration of it we are of opinion that the auditing judge was correct in his conclusion that the document in question was testamentary, and the assets held by the trustee should be transferred to the executor for distribution under the will. In the language of Frederick's Appeal, 52 Pa. 338, the deed appears to have been executed for the grantor's own personal convenience, and no beneficial interest vested in the grandchildren until after his death. As the Supreme Court said, a disposition of property to take effect after the grantor's death is testamentary, and, therefore, revocable. It was, at most, a mere covenant for posthumous gifts. Turner v. Scott, 51 Pa. 126, involves the same principle, and so does Rick's Appeal, 105 Pa. 528, although that case presents facts not existing in the present case.

In the present case, the deed of trust contained an express power of revocation, and while this of itself is not, as we have said, necessarily conclusive, Windolph v. Girard Trust Co., 245 Pa. 349, Dickerson's Appeal, 115 Pa. 198, and Dolan's Estate, 279 Pa. 582, yet in some cases weight has been given to it, as in Beaumont's Estate, 214 Pa. 445.

Windolph v. Girard Trust Company, above mentioned, was largely relied upon by the learned counsel for the exceptants, but there the attack upon the instrument was apparently based upon the settlor's alleged attempt to defraud her husband of his marital rights, and there is no evidence in this case which supports such a claim.

The real question in cases of this character is whether the settlor in the deed intended it to be testamentary or not, and after consideration of the

cases which were cited and of others which were not, we are of opinion that the settlor intended it, so far as his grandchildren were concerned, to be testamentary, taking effect at his death and not before.

The exceptions are dismissed and the adjudication is confirmed absolutely.